OPINION
{¶ 1} This matter came before this court on an election contest pursuant to R.C. 3515.08. Contestor, Paul D. Harmon, claims irregularities occurred in the November 2, 2004 election for judge of the Court of Common Pleas, Licking County, Ohio, Domestic Relations Division for the term commencing January 1, 2005. Defendant, the Licking County Ohio Board of Elections, declared contestee, Craig Baldwin, the winning candidate.
 {¶ 2} In his verified election contest petition filed December 15, 2004, contestor claimed irregularities in the recount of the election results and apparent anomalies in the election process itself:
 {¶ 3} "15. In denying Contestor the opportunity to examine the ballot pages as part of the recount, Defendant Board acted contrary to the Secretary of State's instructions and the statutory right of Contestor under R.C. § 3515.04 to see each ballot. The ballot pages, which actually contain the candidates' names and positions, are part and parcel of the punchcard ballots.
 {¶ 4} "16. The Defendant Board's denials of said requests constitute election irregularities.
 {¶ 5} "17. Based on a review of the precinct by precinct official election results with respect to the election for Judge of the Licking County Court of Common Pleas, Domestic Relations Division, there are apparent anomalies, including significant `undervotes,' i.e. no vote recorded for the office, in various precincts and, in other precincts, unexpectedly high numbers of votes for some of the candidates for this office. Contestor believes that these may be the result of rotation errors in the ballot pages.
 {¶ 6} "18. The irregularities alleged herein are sufficient to change or make uncertain the results of the election."
 {¶ 7} "A contestor of an election held in Ohio must prove two facts by clear and convincing evidence to prevail: (1) that one or more election irregularities occurred, and (2) that the irregularity or irregularities affected enough votes to change or make uncertain the result of the election." In re Election of November 6, 1990 for the Office of AttorneyGeneral of Ohio (1991), 58 Ohio St.3d 103, syllabus.
 {¶ 8} Hearings were held by this court on February 8, February 9 and February 14, 2005 within the time parameters of R.C. 3515.10. The court heard testimony from seven witnesses including contestor, and accepted some forty exhibits on his behalf, plus numerous depositions, and one exhibit on behalf of contestee/defendant Board.
 {¶ 9} The issues raised by contestor in his complaint included irregularities in the recount procedure, significant undervotes and overvotes, and errors in ballot rotation. Contestor also presented some evidence regarding "chads" in the Votomatics, a discrepancy in the number of Votomatics used during the November 2, 2004 election, and early opening of the absentee ballots.
 RECOUNT PROCEDURE {¶ 10} Contestor's witnesses testified that during the recount procedure, the ballots were flashed before them so quickly they could not properly view the ballots. Contestor claimed he was not permitted to examine the Votomatics during the recount, and the three percent recount was not properly verified.
 {¶ 11} R.C. 3515.04 governs procedure for recount and states the following in pertinent part:
 {¶ 12} "At the time and place fixed for making a recount, the board of elections, in the presence of all witnesses who may be in attendance, shall open the sealed containers containing the ballots to be recounted, and shall recount them. If a county used punch card ballots and if a chad is attached to a punch card ballot by three or four corners, the voter shall be deemed by the board not to have recorded a candidate, question, or issue choice at the particular position on the ballot, and a vote shall not be counted at that particular position on the ballot in the recount. Ballots shall be handled only by the members of the board or by the director or other employees of the board. Witnesses shall be permitted to see the ballots, but they shall not be permitted to touch them, and the board shall not permit the counting or tabulation of votes shown on the ballots for any nomination, or for election to any office or position, or upon any question or issue, other than the votes shown on such ballots for the nomination, election, question, or issue concerning which a recount of ballots was applied for."
 {¶ 13} No specific challenge has been made as to the recount under R.C. 3515.13. None of contestor's witnesses claimed they were denied the opportunity to see the ballots. They merely voiced their grievances about the "attitude" of defendant Board's employees and the speed of the displaying of the ballots. We find a lack of courtesy does not constitute an election irregularity.
 {¶ 14} When the three percent hand count was counted electronically, it matched the hand count number on the third try. No evidence was presented to suggest that by rerunning the electronic count, the outcome of the election was affected.
 UNDERVOTES/OVERVOTES {¶ 15} Contestor claims the largest block of the electorate constituted the undervoted ballots. In other words, the electorate placed votes on their respective ballots, but did not vote for the office at issue. Contestor also attempts to imply that overvoting, a high number of votes for a single candidate, was an election anomaly in this case. Upon review, we find no conclusion can be made on the evidence presented as to the cause or affect or reason for undervotes/overvotes, and there is no proof that this phenomenon created an election irregularity sub judice.
 ROTATION ERROR {¶ 16} Defendant Board admitted to a rotation error in one of the Votomatics in "Madison C." The testimony established this error did not affect the results of the election, and contestor agreed. February 9, 2005 T. at 11-12.
 VOTOMATICS {¶ 17} A great deal of contestor's evidence centered on the January 18, 2005 inspection of the Votomatics. Contestor claimed 736 Votomatics were inspected, his counsel at the time of the inspection claimed 719 plus 25 were inspected, and defendant Board claimed 739 were inspected. Contestor argues some Votomatics must have been stripped prior to the court ordered discovery inspection. Defendant Board presented the actual ballots punched during the inspection, 739. Defendant's Exhibit 1. Defendant Board admitted 745 were used. One ballot was in the "Madison C" Votomatic, and the remainder, five, were in the limited voter green bags to be used in certain precincts for a small pockets of voters. A fax survey from defendant Board to the Secretary of State lists 760 Votomatics as deployed on election day.
 {¶ 18} Although there is a discrepancy, we find it does not lead to any conclusion or to any indication of voting irregularities. We are unable to make the quantum leap of faith espoused by contestor. There is no clear or convincing evidence that this discrepancy constitutes an election irregularity. As contestor readily admitted during his own testimony, it would be "speculation" for me to say what happened. February 8, 2005 T. at 16.
 ABSENTEE BALLOTS {¶ 19} The chairman of defendant Board, Michael King, acknowledged they opened the absentee voter envelopes prior to election day, but did not open the privacy envelope and did not count the votes. Although the premature opening may be error, we find no evidence to suggest it violated the sanctity of voter privacy or that any voter irregularity affected the outcome of the election.
 {¶ 20} Based upon the testimony presented, we find no clear and convincing evidence of any election irregularity. We find in favor of contestee, Craig Baldwin, and defendant, Licking County Ohio Board of Elections, and against contestor, Paul Harmon. The verified election contest petition is dismissed.
Farmer, P.J. Wise, J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, we find in favor of contestee, Craig Baldwin, and defendant, Licking County Ohio Board of Elections, and against contestor, Paul Harmon. The verified election contest petition is dismissed. Costs to be paid by contestor pursuant to R.C. 3515.09.